**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **LUIS CAMACHO ORTIZ,** | |
| *Plaintiff,* | **CIVIL NO. 19-1671 (DRD)** |
| v. | |
| **MUNICIPIO DE SAN JUAN, et al.,** | |
| *Defendants.* | |

**OMNIBUS OPINION AND ORDER**

Pending before the Court are the following motions: Codefendant, Guillermo Calixto-Rodríguez's *Motion to Dismiss Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Memorandum in Support Thereof* (Docket No. 63); Codefendant, Municipio de San Juan's *Motion to Dismiss Plaintiff's Amended Complaint Against the Municipality of San Juan Pursuant to Fed. R. Civ. P. 12(b)(6) and Memorandum in Support Thereof* (Docket No. 64); Codefendant, former Mayor of the Autonomous Municipality of San Juan, Carmen Yulín Cruz Soto's *Motion to Dismiss the Amended Complaint Against the Mayor of the Municipality of San Juan and Memorandum in Support Thereof* (Docket No. 65)[1]; and Codefendants, Carmen Serrano Cruz and Marta Vera Ramírez's *Motion to Dismiss Under Rule 12(b)(6) and Memorandum in Support Thereof* (Docket No. 67)[2], collectively (the "Motions to Dismiss"). Plaintiff, Luis Camacho Ortiz timely filed his *Opposition to Motions to Dismiss. See* Docket No. 72. Codefendants,

---

[1] The Mayor of the Municipality of San Juan also filed a *Motion Joining Dockets 63 & 64. See* Docket No. 66.

[2] Codefendants, Carmen Serrano Cruz and Marta Vera Ramírez also filed a *Motion for Joinder of Dockets 63, 64 and 65. See* Docket No. 68.

Guillermo Calixto-Rodríguez and Carmen Yulín Cruz Soto replied shortly thereafter. *See* Docket Nos. 79 and 80, respectively. Plaintiff filed a *Surreply. See* Docket No. 85.

For the reasons stated herein, the Court **GRANTS IN PART and DENIES IN PART** the Defendants' *Motions to Dismiss. See* Docket Nos. 63, 64, 65 and 67.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The instant suit raises causes of action pursuant to 42 U.S.C. § 1983 for alleged violations of the First Amendment of the United States Constitution; Puerto Rico's Act 100; Puerto Rico's Act 115 as to the Municipality of San Juan; and damages as a result thereof, pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code. *See* Docket No. 58; *see also* PR Laws Ann. Tit. 31, §§ 5141 and 5142. Mr. Camacho essentially seeks to enjoin the Municipality of San Juan "from discriminating against its employees based on their exercise of their First Amendment rights"; reinstating him to his position in the Municipality of San Juan (hereinafter, "MSJ"); damages; and attorney's fees and costs and other applicable relief. *See* Docket No. 58.

According to the *Amended Complaint*[3], "[t]his is a 1983 action based on Defendants' retaliation against Plaintiff exercising his First Amendment rights by writing and publishing articles critical of specific defendants and of the Municipality of San Juan itself." Docket No. 58, ¶ 1. Mr. Camacho worked for the Police Force of the Municipality of San Juan from 1998 until his resignation on June 25, 2017. *Id.*, ¶¶ 12, 57. In 2012, he was promoted to Sergeant. *Id.*, ¶ 13. However, Plaintiff argues that the San Juan Municipal Police rejected [his] resignation and fired

---

[3] The *Amended Complaint* is the result of the Court's ruling authorizing Plaintiff to amend the pleadings "in order to clarify and make more explicit the connection between Plaintiff's allegations and Defendants." *See* Docket Nos. 49 at ¶ 3 and 58.

him in retaliation for his writing and publishing articles about matters of public concern that were critical of co-Defendants." *Id.*, ¶ 61.

In his spare time, Mr. Camacho "published a webpage called tunoticiapr.com. *Id.,* ¶ 14. As stated in the *Amended Complaint,* "there were a number or articles that criticized the official conduct of co-Defendants Cruz and Calixto, including one . . . that criticized Mayor Cruz for lying about the official policy of the Municipality of San Juan as to the presence of swimming pools at the municipal facility Casa Cuna." *Id.,* ¶ 16. Mr. Camacho alleges that "[n]o article tunoticiapr.com[4] published contained information that [plaintiff] learned from his work as a sergeant in the San Juan Municipal Police." *Id.*, ¶ 23.

Plaintiff argues that he worked for the MSJ Police Department "and, in his free time, ran a website that reported on matters of public concern. His efforts ignited Defendants' ire and caused them to fire him when Mayor Cruz lied to reporters after a baby drowned in a pool at Casa Cuna." Docket No. 72 at 2. According to Mr. Camacho, "[t]he mayor told journalists that the municipality prohibited such pools; Sgt. Camacho posted pictures of a receipt for a tank of water the municipality bought for the pool; and the Defendants fired him without a hearing for a 'conflict of interest' for reporting the truth."[5] *Id.* Finally, according to Mr. Camacho, the

---

[4] In English, your news Puerto Rico.

[5] Specifically, the allegations as to Mr. Camacho's dismissal are included herein for the reader's reference.

"61. On July 3, 2017, the San Juan Municipal Police rejected Sgt. Camacho's resignation and fired him in retaliation for his writing and publishing articles about matters of public concern that were critical of co-Defendants.

62. The dismissal was based on a letter dated May 10, 2017, which Sgt. Camacho did not receive until after his dismissal.

63. The lack of notice to Sgt. Camacho violated his due process rights.

64. The letter lists letters that tunoticias.com published about San Juan.

65. The letter cites Sgt. Camacho's press credentials as evidence that his work as journalist interfered with his work as a police officer, even though journalists who work part time and free lance are entitled to press credentials, according to the very regulation cited by defendants as being incompatible with his work as a police officer.

66. The letter also cited Sgt. Camacho for not observing the law; not having exemplary conduct; and not keeping matters related to his job confidential, none of which is true.

information that was published was received from sources unrelated to his job on the MSJ. *See Id.*

Whereas, Codefendant Calixto Rodríguez, Police Commissioner of the Municipality of San Juan at the time of the events, seeks dismissal as "[t]he Amended Complaint does not state valid claims for relief against him in his personal capacity and must be dismissed on its face. As will be shown, there are no well-pleaded allegations in the Amended Complaint that impute individual liability on Co-Defendant Calixto-Rodríguez who acted within the purview and legal mandate of Municipal laws and regulations and pursuant to the duties of his former position as Commissioner of the San Juan Municipal Police." Docket No. 63 at 2. In turn, the MSJ argues that "[t]o support his claims, Camacho refers to several events in a vague and generic manner. He also fails, on occasions and to his convenience, to provide a date when the events occurred, like for example when claim letters were sent to the MSJ." Docket No. 64 at 2.

Meanwhile, the former Mayor of the MSJ, Codefendant Cruz Soto joins the arguments set forth by the Defendants and raises the defense of qualified immunity. *See* Docket No. 65. Finally, Codefendants, Carmen Serrano Cruz and Marta Vera Ramírez argue that the *Amended Complaint* fails to provide additional allegations to avoid a dismissal, and should run the same faith as the original *Complaint* as it "fail[s] to claim that the codefendants were involved in any event that cause[d] or contributed to the deprivation of the employment of the plaintiff without due process of the law or without any infringed of his constitutional rights." Docket No. 67 at 2. Furthermore,

---

67. Sgt. Camacho never revealed confidential matters relating to his job.
68. Letter accuses Sgt. Camacho of calumny, libel, or defamation, none of which Sgt. Camacho committed.
69. The letter mentions a hearing scheduled for May 18, 2017, but Sgt. Camacho did not receive the letter until after that date." Docket No. 58, ¶¶ 61-69.

Carmen Serrano Cruz and Marta Vera Ramírez are raising protection under 42 U.S.C. § 1983. *See Id.* In any event, Codefendants Serrano Cruz and Vera Ramírez argue that claims pursuant to § 1983 are time barred.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011) ("in order to 'show' an entitlement of relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).') (quoting *Twombly*, 550 U.S. at 555) (citation omitted). Thus, a plaintiff must, and is now required to, present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). Id. at 570; see e.g. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

When considering a motion to dismiss, the Court's inquiry occurs in a two-step process under the current context-based "plausibility" standard established by *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662. "Context based" means that a plaintiff must allege sufficient facts that comply with the basic elements of the cause of action. *See Iqbal*, 556 U.S. at 677-679 (concluding that plaintiff's complaint was factually insufficient to substantiate the required elements of a Bivens claim, leaving the complaint with only conclusory statements). First, the Court must "accept as true all of the allegations contained in a complaint[,]" discarding legal conclusions, conclusory statements and factually threadbare recitals of the elements of a cause of action.

*Iqbal*, 556 U.S. at 678. "Yet we need not accept as true legal conclusions from the complaint or 'naked assertion[s]' devoid of 'further factual enhancement.'" *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009) (quoting *Iqbal*, 556 U.S. 678) (quoting *Twombly*, 550 U.S. at 557).

Under the second step of the inquiry, the Court must determine whether, based upon all assertions that were not discarded under the first step of the inquiry, the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. 679. This second step is "context-specific" and requires that the Court draw from its own "judicial experience and common sense" to decide whether a plaintiff has stated a claim upon which relief may be granted, or, conversely, whether dismissal under Rule 12(b)(6) is appropriate. *Id.*

Thus "[i]n order to survive a motion to dismiss, [a] plaintiff must allege sufficient facts to show that he has a plausible entitlement to relief." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 41 (1st Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged —but has not 'show[n] ' 'that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Furthermore, such inferences must be at least as plausible as any "obvious alternative explanation." *Id.* at 679-80 (citing *Twombly* 550 U.S. at 567). "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." *Ocasio-Hernandez*, 640 F.3d at 12, (citing *Iqbal*, 556 U.S. at 679); *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 45 (1st Cir. 2009). The First Circuit has cautioned against equating plausibility with an analysis of the likely success on the merits, affirming that the plausibility standard assumes "pleaded facts to be true and read in a plaintiff's favor" even if seemingly incredible. *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (citing *Twombly*, 550 U.S. at 556); *Ocasio-Hernandez*, 640 F.3d at 12

(citing *Twombly*, 550 U.S. at 556) ("[T]he court may not disregard properly pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"). Instead, the First Circuit has emphasized that "[t]he make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, [but] not a merely conceivable, case for relief." *Sepúlveda-Villarini*, 628 F.3d at 29. Additionally, a district court may not weigh evidence in deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Massachusetts Delivery Ass'n v. Coakley*, 671 F.3d 33, 39 n. 6 (1st Cir. 2012) (emphasizing that a primary difference between a motion to dismiss under Rule 12(b)(1) and Rule 12(b)(6) is that, under Rule 12(b)(1), a court may weigh the evidence and make factual determinations).

However, a complaint that rests on "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" will likely not survive a motion to dismiss. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Similarly, unadorned factual assertions as to the elements of the cause of action are inadequate as well. *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011). "Specific information, even if not in the form of admissible evidence, would likely be enough at [the motion to dismiss] stage; pure speculation is not." Id. at 596; see Iqbal, 556 U.S. at 681 ("To be clear, we do not reject [] bald allegations on the ground that they are unrealistic or nonsensical. . . .. it is the conclusory nature of [the] allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *see Mendez Internet Mgmt. Servs. V. Banco Santander de P.R.*, 621 F.3d 10, 14 (1st Cir. 2010) (The *Twombly* and *Iqbal* standards require District Courts to "screen[] out rhetoric masquerading as litigation.").

The First Circuit outlined two considerations for district courts to note when analyzing a motion to dismiss. *García-Catalán v. United States*, 734 F.3d 100, 104 (1st Cir. 2013). First, a

complaint modeled on Form 11 of the Appendix of the Federal Rules of Civil Procedure which contains sufficient facts to make the claim plausible is ordinarily enough to surpass the standard prescribed under Twombly-Iqbal. Id. at 104. Second, district courts should accord "some latitude in cases where "[a] material part of the information needed is likely to be within the defendant's control." Id. (more latitude is appropriate in cases where "it cannot reasonably be expected that the [plaintiff], without the benefit of discovery, would have any information about" the event that gave rise to the alleged injury.) (Internal citations and quotations omitted).

### III.    LEGAL ANALYSIS

#### A.    *Liability Under 42 U.S.C. § 1983*

Section 1983 does not create any independent substantive rights; instead, Section 1983 is only a procedural vehicle to vindicate constitutional and other federal statutory violations brought about by state actors. *See Baker v. McCollan*, 443 U.S. 137, 145, n.3 (1979)("Section 1983 ... is not itself a source of substantive rights, but [merely provides] a method for vindicating federal rights elsewhere conferred ...."); *Albright v. Oliver*, 210 U.S. 266 (1994); *Lockhart-Bembery v. Sauro*, 498 F.3d 69, 74 (1st Cir. 2007); *Cruz-Erazo v. Rivera-Montañez*, 212 F.3d 617 (1st Cir. 2000). Section 1983 provides a mechanism to remedy for deprivations of rights that are federally enshrined elsewhere. *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985).

Section 1983 provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

When assessing the imposition of liability under Section 1983, we must first ask "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 558 (1st Cir. 1989)(citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). Acting under color of state law requires that a "defendant in § 1983 action have exercised power possessed by virtue of state law and made possible only because wrongdoer is clothed with authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988).

Although Section 1983 provides an avenue to remedy many deprivations of civil liberties in federal court, it "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). The Eleventh Amendment bars lawsuits for monetary damages against a State in federal court, unless said State has waived its immunity or unless Congress has expressly overridden that immunity. *See* CONST. Amend. XI; *Will*, 491 U.S. at 66 (citing *Welch v. Texas Dept. of Highways and Public Transportation*, 483 U.S. 468, 472-473 (1987) (plurality opinion)); *O'Neill v. Baker*, 210 F.3d 41 (1st Cir. 2000). Furthermore, "neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action." *Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir. 1991). The reasoning follows that a suit against an official actor is a suit against his office, and by default a suit against the state. *See Will*, 491 U.S. at 71*; Brandon v. Holt*, 469 U.S. 464, 471 (1985); *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985).

Puerto Rico has long been considered a state for Eleventh Amendment purposes. *See Irizarry–Mora v. Univ. of Puerto Rico*, 647 F.3d 9 (1st Cir.2011); *Metcalf & Eddy, Inc.*

*v. P.R. Aqueduct & Sewer Auth.*, 991 F.2d 935 (1st Cir.1993). "The Eleventh Amendment bars the recovery of damages in a federal court against the Commonwealth of Puerto Rico, and, by the same token, it bars the recovery of damages in *official capacity* suits brought against Puerto Rico officials where recovery will come from the public fisc." *Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506, 516 (1st Cir.1987) (citing *Ramirez v. P.R. Fire Service*, 715 F.2d 694, 697 (1st Cir.1983) and *Kentucky v. Graham,* 473 U.S. 159 (1985)) (emphasis in the original); *Maysonet–Robles v. Cabrero*, 323 F.3d 43 (1st Cir.2003).

In the instant matter, all of the facts alleged by Plaintiff transpired under the umbrella of the Autonomous Municipality of San Juan, an executive agency of the Commonwealth of Puerto Rico. At all relevant times, Defendants were employed by the MSJ and acted in their official capacities. Furthermore, the alleged conduct occurred within the scope of Defendants' employment, as Defendants' alleged injurious acts happened while conducting an intervention pursuant to official duties. Further, the individual Defendants were acting under color of state law when the purported conduct transpired, as the alleged discrimination was committed by employees of the MSJ during the course of their employment. Therefore, Section 1983 is an appropriate avenue to remedy Plaintiffs' claims.

### a)   Retaliation under the First Amendment

In order for the Court to evaluate a First Amendment retaliation claim by a public employee, as suggested herein, a three-part test, known as the *Pickering* balancing, is applied: "[1] he spoke as a citizen on a matter of public concern, [2] that his interest in speaking outweighed the government's interest, as his employer, in promoting the efficiency of the public services it provides . . . , and [3] that his speech was a 'substantial or motivating factor' in his

firing." *Rodriguez v. Municipality of San Juan*, 659 F.3d 168, 180 (1st Cir. 2011); *see Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). More importantly, [i]n a section 1983 claim of retaliatory prosecution for First Amendment activity, a plaintiff must prove that [his] conduct was constitutionally protected and was a 'substantial' or  'motivating' factor for the retaliatory decision . . ." *Gericke v. Begin*, 753 F.3d 1, 6 (1st Cir. 2014).

On another note, the First Circuit has consistently held that "close temporal proximity between two events may give rise to an inference of causal connection." *Nethersole v. Bulger*, 287 F.3d 15, 20 (1st Cir. 2002)(citing *Hodgens v. Gen. Dynamics Corp.,* 144 F.3d 151, 168 (1ˢᵗ Cir. 1998).

In turn, as pointed out by several circuits, "the absence of speech—in fact, its explicit disclaimer by plaintiff—is fatal to the plaintiff's claim." *Fogarty v. Boles*, 121 F.3d 886, 891 (3ʳᵈ Cir. 1997); *see Wasson v. Sonoma County Junior Coll.*, 203 F.3d 659 (9th Cir. 2000), cert. denied, 531 U.S. 927, 148 L. Ed. 2d 245, 121 S. Ct. 305 (2000); *Jones v. Collins*, 132 F.3d 1048, 1054 (5th Cir. 1998); *Barkoo v. Melby*, 901 F.2d 613 (7th Cir. 1990). Particularly, in *Wasson v. Sonoma County*, the Ninth Circuit determined that a plaintiff "[h]aving denied that she wrote the letters, [] undermines her claim that the defendants' conduct impermissibly chilled her speech" while adding that  '[a] free speech claim depends on speech, and there was none in this case.'" 203 F.3d at 662 (quoting *Fogarty*, 121 F.3d at 890.)

### 1. *Guillermo Calixto-Rodríguez*

Mr. Calixto-Rodríguez argues that are only two (2) allegations of the *Amended Complaint* that directly mention him. To wit,

"37. Defendant Calixto instructed Inspector Heriberto Pagan Concepcion to stop assigning overtime work to Sgt. Camacho, according to information learned by Plaintiff in September 2018 as the result of a conversation with former Deputy Director, now Captain Raymond Ferrer.

38. On January 20, 2016 Deputy Director Ferrer gave Defendant Calixto a report with communication number DPSP-OC-C-2016-12."

Docket No. 58 at 5. To that effect, Mr. Calixto-Rodríguez alleges that "Paragraph 37 [is] intrinsically insufficient as it is based on hearsay regarding a conversation between Plaintiff and Captain Ferrer where Co-Defendant Calixto-Rodríguez allegedly instructed, in an unspecified time and manner, that Plaintiff should not be assigned overtime." Docket No. 63 at 9. As to Paragraph 38, Mr. Calixto-Rodríguez argues that it "merely avers that on January 29, 2016, Ferrer gave Calixto-Rodríguez a report." *Id.* As such, "[t]hose allegations do not arise out of good-faith personal knowledge by Plaintiff of the matters." *Id.* Therefore, Mr. Calixto-Rodríguez alleges that the *Amended Complaint* fails to submit plausible claim for relief as to him. In turn, Mr. Camacho argues that Mr. Calixto-Rodríguez "acted directly to violate [his] Freedom of Expression and Due Process" as "he fired him in a manner that precluded him from having an opportunity to be heard." Docket No. 72 at 7.

On another note, the First Circuit has consistently held that "close temporal proximity between two events may give rise to an inference of causal connection." *Nethersole v. Bulger*, 287 F.3d 15, 20 (1st Cir. 2002)(citing *Hodgens v. Gen. Dynamics Corp.,* 144 F.3d 151, 168 (1st Cir. 1998). Looking closely at the allegations in the *Amended Complaint*, Mr. Calixto-Rodríguez received the purported report on January 20, 2016, more than a year before he was allegedly dismissed on July 3, 2017. *See* Docket No. 58, ¶ ¶ 38, 57 and 61. Moreover, although Plaintiff alleges that there was an order from Mr. Calixto-Rodríguez to stop assigning him overtime, there

is no information indicating when said order was issued. Hence, the "close temporal proximity between two events may give rise to an inference of causal connection" is not met herein. *Nethersole v. Bulger*, 287 F.3d 15, 20 (1st Cir. 2002)(citing *Hodgens v. Gen. Dynamics Corp.,* 144 F.3d 151, 168 (1ˢᵗ Cir. 1998).

Furthermore, Plaintiff first recognizes that he "never wrote a single article about the San Juan Municipal Police Force, but he published all the articles found on tunoticiapr.com, many of which were critical of Mayor Cruz and the Municipality of San Juan." Docket No. 58, ¶ 58. According to Mr. Camacho, it was "tunoticias's webmaster, Manuel Gonzalez, [who] wrote all the articles about the San Juan Police Force based on information sent to the website or received by other means." *Id.* ¶ 22. Plaintiff clarified that "[n]o article tunoticiapr.com published contained information that [he] learned from his work as a sergeant in the San Juan Municipal Police." ¶ 24. Yet, Mr. Camacho also alleges that he wrote and published several articles related to a drowning accident that occurred in Casa Cuna San Juan, including photographs of three (3) pools that were located at Casa Cuna San Juan and that the Defendants "retaliated against him for doing so." Docket No. 58, ¶¶ 41-47, Docket No. 72 at 16. It should be noted that the articles related to the incident at Casa Cuna San Juan were published on July 2016, and no allegations were raised as to Mr. Calixto-Rodríguez related to the Casa Cuna San Juan articles.

Accordingly, by admitting in conclusory fashion that he had not written the articles subject of the allegations against Mr. Calixto-Rodríguez, Mr. Camacho destroys his claim that he engaged on a protected speech or that he is liable for a violation of said right. Even if Mr. Camacho finds the Defendants' argument "border on the silly," (*Id.* at 16) several circuits have concluded that "the absence of speech—in fact, its explicit disclaimer by plaintiff—is fatal to the

plaintiff's claim." *Fogarty,* 121 F.3d at 891; *see Wasson v. Sonoma County Junior Coll.*, 203 F.3d 659 (9th Cir. 2000), cert. denied, 531 U.S. 927, 148 L. Ed. 2d 245, 121 S. Ct. 305 (2000); *Jones v. Collins*, 132 F.3d 1048, 1054 (5th Cir. 1998); *Barkoo v. Melby*, 901 F.2d 613 (7th Cir. 1990). Mr. Camacho admits he did not write the articles subject to the 2015 Memorandum; therefore, he did not speak publicly, and accordingly, there was no speech from Plaintiff that could be protected.

Finally, it is Mr. Calixto-Rodríguez's position that "a claimant cannot impute personal liability on governmental actors with generalized allegations of currencies in the public workplace, without any facts to plausibly establish direct involvement in actions that allegedly deprived the claimant of his/her constitutional rights." Docket No. 79 at 3.

The Court finds that Plaintiff fails to present with the specificity required, retaliation allegations that could result in Mr. Calixto-Rodríguez's individual act with knowledge of, or in the account of, Plaintiff's exercise of a protected speech right. Thus, it would be practical to conclude that any action taken by Mr. Calixto-Rodríguez was pursuant to Municipal laws and regulations not in retaliation. Finally, from the contents of the *Amended Complaint,* there are no allegations as to Mr. Calixto-Rodríguez that could reasonably lead to being personally responsible to Plaintiff because of an act in violation of the protected right of expression. Therefore, Mr. Calixto-Rodríguez is not liable in his personal capacity.

### 2.    *Municipality of San Juan*

In order to prevail in a § 1983 claim against a Municipality, Plaintiff must meet the standard set forth in *Monell v. Dept. of Soc. Serv. of City of N.Y.*, 436 U.S. 658, 690 (1978). Therein, the Supreme Court explained the extent of the liability of the Municipality as an employer.

Particularly, the Supreme Court held that local governments may be sued for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decision-making channels. *Id.* Essentially, the Supreme Court found that "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, [the Supreme Court concluded] that a municipality cannot be held liable solely because it employs a tortfeasor—or in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. at 691. The Supreme Court has also held that "under § 1983, local governments are responsible only for 'their own illegal acts.' They are not vicariously liable under § 1983 for their employees' actions. *Connick v. Thompson*, 563 U.S. 51, 60 (2011)(citations omitted).

Moreover, "Plaintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick*, 563 U.S. at 60 (quoting *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (2018)). The Supreme Court explained that "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* Therefore, "municipal liability is limited to actions for which the municipality is actually responsible." *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 470, 106 S. Ct. 1292, 1292, 89 L. Ed. 2d 452 (1986). Accordingly, if the policy applied by the Municipality is not an official policy, Plaintiff would have to demonstrate that said action constitutes "an unofficial custom as evidenced by widespread action or inaction." *McElroy v. City of Lowell*, 741 F.Supp. 2d 349, 353 (D. Mass 2010).

The MSJ argues that the *Amended Complaint* fails to establish a municipal official policy or custom that caused his alleged injury. According to the MSJ, "[t]he only mention that the Amended Complaint makes of a 'municipal policy' is when referring to the documents published by 'tunoticiapr.com' regarding the incident at Casa Cuna San Juan." Docket No. 64 at 9. The MSJ argues that it is irrelevant whether there is a municipal policy applicable to the management of Casa Cuna, as said allegations do not demonstrate Plaintiff's injury as result of either a "municipal policy" or "custom". However, Plaintiff alleges that his dismissal was based on a letter dated May 10, 2017 that he only received after his dismissal. *See* Docket No. 58, ¶ 62. According to Mr. Camacho, his dismissal was due to the fact that "his work as journalist interfered with his work as a police officer, even though journalists who work part time and free lance are entitled to press credentials, according to the <u>very regulation</u> cited by defendants as being incompatible with his work as a police officer," and "<u>for not observing the law</u>," among other things. *Id.*, ¶ 65-66.

The Court finds that the *Amended Complaint* allegations as to a municipal official policy that was the basis for Plaintiff's dismissal was sufficient, as his dismissal was justified with official policies of the MSJ.  At this stage of the proceedings, said allegation is sufficient to prove a § 1983 claim as to MSJ. Accordingly, MSJ's request for dismissal as to § 1983 regarding the MSJ is hereby **DENIED.**

### 3.   *Carmen Yulín Cruz Soto*

It is well settled that "the plaintiff in a Section 1983 action must show "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization," *id.*, between the actor and the underlying violation." *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 49 (1st Cir. 2009). "[F]or purposes of section 1983, supervisors sometimes may be

held accountable for their subordinates' misdeeds." *Camilo-Robles v. Zapata*, 175 F.3d 41, 43 (1st Cir. 1999). However, liability will only attach "if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." *Id.* at 44. It is important to note that,

> [s]upervisory liability may not be predicated upon a theory of *respondeat superior*. A supervisor may be found liable only on the basis of his own acts or omissions. Moreover, a supervisor cannot be liable for merely negligent acts. Rather, a supervisor's acts or omissions must amount to a reckless or callous indifference to the constitutional rights of others.

*Febus-Rodriguez v. Betancourt-Lebron*, 14 F.3d 87, 91–92 (1st Cir. 1994)(internal citations omitted).

Codefendant, Cruz Soto also argues that the *Amended Complaint* fails to establish a First Amendment protected speech as Plaintiff recognizes that he did not write any of the articles subject of 2015 Memorandum, and therefore, "the absence of speech—in fact, its explicit disclaimer by plaintiff—is fatal to the plaintiff's claim." *Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 495 (3d Cir. 2002)(citing *Fogarty v. Boles*, 121 F.3d 886, 891 (3d. Cir. 1997). A similar stance has been applied by other sister courts of appeals which have held that "there can be no First Amendment claim when there is no speech by the plaintiff." *Id.*; *see Wasson v. Sonoma County Junior Coll.*, 203 F.3d 659 (9th Cir.2000), *cert. denied*, 531 U.S. 927, 121 S.Ct. 305, 148 L.Ed.2d 245 (2000). In turn, Plaintiff maintains that "Mayor Cruz's direct action of ordering that Sgt. Camacho be investigated for publishing articles on matters of public concern caused him the constitutional injury of being dismissed in retaliated against for publishing articles that revealed her lies about the municipality's responsibility for the death of an infant at Casa Cuna as well as other articles of public concern." Docket No. 72 at 6.

The Court finds that at this stage of the proceedings, the allegations as to Ms. Cruz-Soto's role in the discipline imposed to Mr. Camacho and his eventual dismissal is sufficient to establish a plausible claim for relief. Although a lack of a protected speech makes the allegations concerning the October 20, 2015 memorandum insufficient to sustain a First Amendment allegation against Cruz Soto, there were articles that Mr. Camacho alleges to have written regarding the incident at Casa Cuna San Juan, that could be the basis for retaliatory acts against Plaintiff.

Finally, upon a thorough review of the *Amended Complaint,* and taking the complaint in light most favorable to Plaintiff, the Court finds that the factual allegations against Codefendant Cruz-Soto, including specific retaliatory acts against Plaintiff are sufficient to defeat a request for dismissal before conducting discovery.  In fact, Mr. Camacho alleges: "[Mayor Cruz] sought to retaliate against Sgt. Camacho for discovering and publishing the truth that, contrary to her official statement having the pool at Casa Cuna was municipal policy." Docket No. 58, ¶ 49. Evidently, upon the conclusion of discovery, the Court can be adequately equipped to determine whether a dismissal by way of summary judgment is warranted. Accordingly, as the Court finds the allegations as to Codefendant Cruz Soto sufficient, a dismissal as to § 1983 is hereby **DENIED.**

### 4.       *Marta Vera and Carmen Serrano:*

"Civil rights actions are characterized by the fact that § 1983 does not contain a specific statute of limitations . . . Consequently, courts have been encouraged to borrow the state statute of limitations which is most appropriate . . . or most analogous, to the particular Section 1983 claim . . . [T]he most analogous state limitations period will generally be the one reserved for personal torts." *Rodríguez–Narváez v. Nazario,* 895 F.2d 38, 41–42 (1st

Cir.1990) (citations omitted). In Puerto Rico, that statute is Civil Code Art. 1868, codified at P.R. Laws Ann. tit. 31, § 5298(2) (1995), which provides a one-year period for personal tort actions.

As for the tolling of such period, the Puerto Rico Civil Code, at Art. 1873, provides that: "[p]rescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor." P.R. Laws Ann. tit. 31, § 5303. Whenever the running of a statute of limitations is tolled by any of these three methods, the period of limitations begins to run again from the beginning. *Díaz–de–Diana v. A.J.A.S. Ins. Co.,* 110 P.R. Dec. 471 (1980).

Filing of a complaint in court will toll the running of the statute of limitations even if the complaint is not notified to the defendant, while an extrajudicial claim ***must*** be notified to the defendant if it is to have a tolling effect. *Compare Silva–Wiscovich v. The Weber Dental Manufacturing Co.,* 835 F.2d 409 (1987) (statute of limitations was tolled by filing of suit, even when suit was voluntarily dismissed by the plaintiffs before serving process upon the defendants), *with Secretario del Trabalo v. Finetex,* 116 P.R. Dec. at 827 (timely *notification* of administrative charge tolls running of statute of limitations).

The Supreme Court of Puerto Rico has often relied on a definition of "extrajudicial claim" written by a Spanish commentator:

> In principle, claim stands for demand or notice. That is: it is an act for which the holder of a substantive right addresses the passive subject of said right, demanding that he adopt the required conduct. The claim, then, is a pretension in a technical sense.

L. Díez–Picazo, *La prescripción en el Código Civil [Prescription in the Civil Code]* (cited in *Díaz–de–Diana,* 110 P.R. Dec. at 476; *Secretario del Trabajo v. Finetex,* 116 P.R. Dec. at 827; *Cintrón*

*V.E.L.A.,* 127 P.R. Dec. at 592). The First Circuit has summarized the applicable Puerto Rico

doctrine as to extrajudicial claims as follows:

> [A]n extrajudicial claim does in fact include virtually any demand formulated by
> the creditor. The only limitations are that the claim must be made by the holder
> of the substantive right (or his legal representative), ..., it must be addressed to
> the debtor or passive subject of the right, not to a third party, ..., and it must
> require or demand the same conduct or relief ultimately sought in the subsequent
> lawsuit.

*Rodríguez-Narváez,* 895 F.2d at 44. The normal effect of a single extrajudicial claim, such as an

administrative charge, is to toll the statute of limitations and thus to start it running again.

However, the Court notes that the pendency of administrative proceedings does not prevent the

period from running. Therefore, if no further action is taken, upon the expiration of the new

period the cause of action will be barred.

In employment actions, "[w]here, as here, the only challenged employment practice

occurs before the termination date, the limitations period necessarily commence to run before

that date." *Delaware State College v. Ricks*, 449 U.S. 250, 259 (1980). "But this is the 'natural

effec[t] of the choice Congress has made,' *ibid.*, in explicitly requiring that the limitations period

commence with the date of the 'alleged unlawful employment practice,' 42 U.S.C. § 2000e–5(c)."

*Id.*, fn. 11.

Codefendants, Vera-Ramírez and Serrano-Cruz were the MSJ's Director of the Human

Resources Department and Director of the MSJ's press office, respectively, when the incident

that is subject of the instant suit occurred. *See* Docket No. 58, ¶ 4. Mr. Camacho alleges that "[i]n

October 2015, Defendants Vera-Ramírez and Serrano-Cruz drafted a report dated October 20,

2015 detailing all the articles published on tunoticiapr.com that the Defendants understood

harmed the image of Mayor Cruz." *Id.,* ¶ 18. According to Plaintiff, Codefendant Cruz-Soto, Mayor of the MSJ when the incident occurred, was the person who instructed Vera-Ramírez and Serrano-Cruz to draft the report. *Id.*, ¶ 19. Mr. Camacho further alleges that as a result thereof, Codefendant Serrano used her media contacts to investigate him, and requested that the Deputy Commissioner of the San Juan Municipal Police fire him whenever a new article was published by tunoticiapr.com showing the MSJ or Ms. Cruz-Soto in a negative light. *Id.*, ¶¶ 34-35.

As the challenge of an employment practice must be made within a year of the alleged unlawful practice, as opposed to a year after the dismissal, and Mr. Camacho failed to timely raise that matter, allegations under § 1983 as to Codefendants Vera-Ramírez and Serrano-Cruz are time-barred, therefore a dismissal is warranted.

### b)  *Qualified Immunity*

Qualified immunity is an immunity from suit rather than a mere defense to liability. *See Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan,* 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). Qualified immunity provides "ample room for mistaken judgments" and protects all government officials except "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Thus, officials are immune from claims for damages "as long as their actions could reasonably have been thought consistent with the rights they are alleged

to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

In *Wood v. Moss,* —— *U.S.* ——, 134 S.Ct. 2056, 2061, 188 L.Ed.2d 1039 (2014), the Court held that "[o]fficials are sheltered from suit, under a doctrine known as qualified immunity, when their conduct 'does not violate clearly established ... constitutional rights' a reasonable official, similarly situated, would have comprehended. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)." *Id.* at 2061. "The First Amendment, our precedent makes plain, disfavors viewpoint-based discrimination. *See Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 828, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). *Id.* at 2061. "The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.' *Ashcroft v. al–Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2080, 179 L.Ed.2d 1149 (2011)." *Id.* at 2067. "[U]nder the governing pleading standard, the 'complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.' *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937)." *Id.* at 2067. "Requiring the alleged violation of law to be 'clearly established' 'balances ... the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.' *Pearson v. Callahan*, 555 U.S. at 231, 129 S.Ct. 808." *Id.* at 2067. "[I]ndividual government officials 'cannot be held liable' in a *Bivens* suit 'unless they themselves acted [unconstitutionally].' *Iqbal*, 556 U.S. at 683, 129 S.Ct. 1937." *Id.* at 2070. *See also Reichle v. Howards*, —— U.S. ——, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012) ("To be clearly established, a right must be sufficiently clear 'that

every reasonable official would [have understood] that what he is doing violates that right.' (citing *Ashcroft v. Kidd*, 563 U.S. 731, 131 S.Ct. 2074, 2078, 179 L.Ed.2d 1149 (2011)."

Currently, the First Circuit applies a two-part test to analyze the application of qualified immunity. *Maldonado v. Fontanes,* 568 F.3d 263, 269 (1st Cir.2009)(clarifying that the second steps of the two-step inquiry essentially compresses two prongs of the previous three-step inquiry). Thus, under the presently applicable inquiry, in order "[t]o determine whether a particular officer is entitled to qualified immunity, a court must decide: (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was clearly established at the time of the defendant's alleged violation." *Estrada v. Rhode Island,* 594 F.3d 56, 62–63 (1st Cir.2010)(internal quotations omitted). Either step of the analysis may be used first in the Court's analysis. *Maldonado v. Fontanes,* 568 F.3d 263, 269 (1st Cir.2009).

The second step, in turn, has two aspects. *Id.* First, the Court must analyze whether "the contours of the right [were] sufficiently clear [so] that a reasonable official would understand that what he [did] violate[d] that right." *Id.* Second, the Court must analyze "whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights" in the situation with which the defendant was confronted. *Id.* Thus, "the salient question is whether the state of the law at the time of the alleged violation gave the defendant fair warning that his particular conduct was unconstitutional." *Id. See also Alberty Aviles v. Department of the Army,* 666 F.Supp.2d 224, 229–232 (D.P.R.2009). Finally, the First Circuit as firmly held that the quality immunity defense "can be raised at the motion to dismiss stage, 'lest unwarranted lawsuits impede the proper functioning of government.'" *Remus-Milan*

*v. Irizarry-Pagan*, 81 F. Supp. 3d 174, 181 (D.P.R. 2015)(*quoting Garnier v. Rodríguez*, 506 F.3d 22, 26 (1st Cir. 2007).

Herein, Codefendants, Cruz-Soto, Vera-Ramirez, Serrano-Cruz and Calixto-Rodríguez argue that they are entitled to qualified immunity. In analyzing this argument, it is important to note that, "[i]n recognition of the government's interest in running an effective workplace, the protection that public employees enjoy against speech-based reprisals is qualified." *Diaz-Bigio v. Santini*, 652 F.3d 45, 51 (1st Cir. 2011)(quoting *Decottis v. Whittemore,* 635 F.3d 22, 29 (1st Cir. 2011). More importantly, "[a]lthough the Supreme Court has made clear that municipal officers can 'be on notice that their conduct violates established law even in novel factual circumstances,' it has also stressed that qualified immunity 'protects 'all but the plainly incompetent or those who knowingly violate the law.' *Id.* at 50 (internal citations omitted). Finally, "[i]mmunity exists even where the abstract 'right' invoked by the plaintiff is well-established, so long as the official could reasonably have believed 'on the facts' that no violation existed." *Dirrane v. Brookline Police*, 315 F.3d 65, 69 (1st Cir. 2002).

At this juncture the Court need not delve into the elements of the three-part test. As previously stated, the Court will refrain from applying the matter of public concern test at this juncture. Accordingly, Defendants' request for qualified immunity are hereby **DENIED.**

**B.      *Supplemental Jurisdiction over State Law Claims***

Federal jurisdiction exists when a well-pleaded complaint necessarily "requires the resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 164, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). In

essence, Federal Courts by their very nature are courts of limited jurisdiction. *See Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). The presumption is that a federal court lacks jurisdiction. *Kokkonen*, 544 U.S. at 377, 114 S.Ct. 1673. Consequently, the burden is on the plaintiff who claims jurisdiction to affirmatively allege and prove jurisdiction. *Id.* To bring a civil action within the court's subject matter jurisdiction, a plaintiff must allege that his action involves either a federal question or diversity jurisdiction. *See* 28 U.S.C. §§ 1331 & 1332.

In the instant case, it is clear that there is no diversity between the parties. Nonetheless, since Plaintiff brought claims to this forum pursuant to 42 U.S.C. § 1983 for alleged violations of the First Amendment of the United States Constitution, the Court's jurisdiction would be based on federal question jurisdiction. Once federal jurisdiction is determined, the Court may exercise supplemental or pendant jurisdiction on a state law claim, provided that it is part of the same case or controversy of the federal question before this Court. *See* 28 U.S.C. § 1367(a) (allowing a court to exercise supplemental jurisdiction over state law claims that are "so related to the claims in the action within the original jurisdiction that they form part of the same case or controversy"; *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### 1. Puerto Rico Act 100

It is hornbook law that Puerto Rico Act 100 is unapplicable to the MSJ and its employees. Specifically, the Puerto Rico Supreme Court has consistently held that,

> "[t]he role of the municipality within our governmental framework is so important that, absent a clear legislative expression, we cannot construe that the lawmaker wished to apply Act No. 100 to municipalities. Moreover, bearing in mind the

purpose for which a "municipality" is created, it cannot be said that it operates as a private business or enterprise within the common and current meaning of these terms. A "municipality" does not operate for profit, as do private businesses, but for public service purposes. Neither is it a public corporation. Consequently, Act No. 100 does not apply to municipalities."

*Antonio Rodriguez Cruz v. Pedro Padilla Ayala*, 125 D.P.R. 486, 1990 WL 657488, P.R. Offic. Trans.

Said finding has been affirmed time and time again by the Puerto Rico Supreme Court further adding that "although a proposal to extend the provisions of Act 100 to all government employees had been submitted, the Legislature had rejected it. As such, and taking into account the purpose for which municipalities were created, the state functions that they carry out, and its lack of for-profit operation, the P.R. Supreme Court held that, absent a clear legislative expression to the contrary, Act 100 could not be construed as applying to municipalities. *Montalvo-Padilla v. Univ. of P.R.,* 498 F.Supp. 464 (D.P.R. 2007)(citations omitted).

The Court needs not go further. A dismissal of the Puerto Rico Act 100 claim against the Defendants is warranted.

### 2.      Puerto Rico Act 115

In the *Amended Complaint*, Plaintiff alleges that "Law 115 prohibits an employer and the employer's agents from dismissing, threatening, or discriminating against an employee for reporting the employer's illegal conduct, which Defendants here did." Docket No. 58, ¶ 82. However, in order to be eligible for said relief, Plaintiff must "offer or attempt to offer, verbally or in writing, any testimony, expression or information before a legislative, administrative or judicial forum in Puerto Rico." PR Laws Ann. Tit. 29 § 194.

As stated by the First Circuit, "[t]o make out a prima facie case of retaliation under the familiar burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 801–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Furthermore, "[t]he statute requires the employee to establish, by direct or circumstantial evidence, a prima facie case that he or she (1) 'participated in an activity protected by §§ 194 *et seq.*' and (2) was subsequently discharged or otherwise discriminated against. *Id.* § 194a(c)." *Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 45.

In the *Response*, Plaintiffs recognizes that "Sgt. Camacho did not report illegal activity on his website; the reports alleged are limited to incompetence and untruthfulness. Nor did Sgt. Camacho report any illegal activity to any governmental agency, so the Law 115 should be dismissed." Docket No. 72 at 3. The Court needs not go further. A dismissal in favor of MSJ as to the Puerto Rico Act 115 claim is hereby **GRANTED.**

### 3. Tort Claims

The Puerto Rico Supreme Court has held in numerous occasions that "[a]s a general rule, in the face of conduct by an employer that has been typified and penalized by special labor legislation, the employee only has recourse to the relief of said Act, and is barred from seeking additional compensation under Article 1802 of the Civil Code." *Rosario v. Valdes*, 2008 WL 509204 (D.P.R. Feb. 21, 2008)(quoting *Santini Rivera V. Serv. Air, Inc.,* 137 D.P.R. 1 (1994). Accordingly, "it necessarily follows that, to the extent that a specific labor law covers the conduct for which a plaintiff seeks damages, he is barred from using that same conduct to also bring a claim under Article 1802. An additional claim under Article 1802 may only be brought by the employee-plaintiff if it is based on tortious or negligent conduct distinct from that covered by the specific labor law(s) invoked." *Id.*

Plaintiff's bases his Article 1802 and 1803 claims and his specific federal and state law claims on the same factual allegation. Consequently, these superfluous claims are hereby **DISMISSED** as to all defendants.

On a final note, while analyzing the pending motions, the Court noticed that Plaintiff was attempting to amend the pleadings through his *Response* in opposition to motion to dismiss. It is surprising as the Defendants had already filed motions to dismiss under 12(b)(6) once before, and the Court, instead allowed Plaintiff to correct the deficiencies in the pleadings. *See* Docket Nos. 57-58. It is a well-known fact that "[f]actual allegations made for the first time in a responsive memorandum are not properly considered in evaluating the sufficiency of a complaint under Rule 12(b)(6)." *Huertas León v. Colón-Rondón*, 376 F. Supp. 3d 167, 183 (D.P.R. 2019). This type of litigation is discouraged by the Court.

## IV.    CONCLUSION

For the aforementioned reasons, and taking the complaint in light most favorable to Plaintiff, the Court hereby **GRANTS IN PART and DENIES IN PART** the *Motions to Dismiss* as follows:

- Codefendant, Calixto-Rodríguez's request for dismissal for lack of personal liability under 42 U.S.C. § 1983 is hereby **GRANTED**;

- Codefendant, Municipality of San Juan's liability pursuant to 42 U.S.C. § 1983 is hereby **DENIED**;

- Codefendant, Carmen Yulín Cruz-Soto's request for dismissal for lack of personal liability under 42 U.S.C. § 1983 is hereby **DENIED**;

- Codefendants, Carmen Serrano-Cruz and Marta Vera-Ramírez's request for dismissal for lack of personal liability under 42 U.S.C. § 1983 is hereby **GRANTED**;

- Codefendants, Cruz-Soto, Vera-Ramirez, Serrano-Cruz and Calixto-Rodríguez's requests for qualified immunity are hereby **DENIED**;

- The Defendants' request for dismissal as to Puerto Rico Act 100 is hereby **GRANTED**;

- The Defendants' request for dismissal as to Puerto Rico Act 115 is hereby **GRANTED**;

- Tort Claims pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code are hereby **DISMISSED** as to all Defendants.

Upon the conclusion of discovery, the Defendants may renew their arguments by a request for summary judgment.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of March, 2021.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge