**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **LUIS CAMACHO ORTIZ,**  *Plaintiff,*  v.  **MUNICIPIO DE SAN JUAN, et al.,**  *Defendants.* | **CIVIL NO. 19-1671 (DRD)** |

**OPINION AND ORDER**

Luis Camacho-Ortiz ("Plaintiff" and/or Camacho") bring suits pursuant to 42 U.S.C. § 1983 against the Municipality of San Juan ("Municipality") and Carmen Yulín Cruz ("Mayor Cruz") (hereinafter, "Defendants"), alleging violation of the First Amendment and Due Process Clause. Specifically, Plaintiff alleges that his action is "based on Defendants' retaliation against Plaintiff exercising his First Amendment rights by writing and publishing articles critical of specific defendants and of the Municipality of San Juan itself." Docket No. 58, ¶ 1. According to Plaintiff, he was unlawfully terminated from his employment as a Municipal Police Officer in retaliation after he authored and published two articles related to an incident that occurred in Casa Cuna Residence in the Municipality of San Juan. Plaintiff also alleges that lack of notice prior to his dismissal violated his due process rights.[1] As of right now, Plaintiff's only surviving claims are those related to his Section 1983 action under the First Amendment and Due Process protection of the United States Constitution.

Pending before the Court is the Municipality's *Motion for Summary Judgment*. (Docket No. 166-167). to which Co-defendant Mayor Cruz joined by filing a *Motion for Joinder Regarding Motion for Summary Judgment filed by Co-defendants Municipality of San Juan (Docket No.*

---

[1] On March 29, 2021, this Court issued an Opinion and Order where it dismissed Plaintiff's claims based on Law 100, under Law 115 and Plaintiff's tortious state claims were also dismissed. *See*, Docket No. 103. Additionally, this Court already dismissed Plaintiff's claims against co-defendants Calixto Rodriguez, Carmen Serrano and Marta Vera. (Docket No. 103).

*167).*(Docket No. 169). Plaintiff filed his opposition thereto (Docket No. 178-179) and Defendants replied. (Docket Nos. 188-189).

Defendants argue that they are not liable for any claims made by Plaintiff. Specifically, Defendants posit that "there is no evidence to support either a finding that the Municipality of San Juan retaliated against Camacho by terminating his employment pursuant to a municipal policy or as part of a custom as evidenced by widespread action or inaction." (Docket No. 167 at 2). Furthermore, Defendants argue that "no First Amendment claim is viable as the articles written by Mr. Camacho—the only ones of which he claims Frist Amendment protection—were published after a disciplinary investigation was already stated. Finally, as we will detail, the evidence proves that the poorly articulated due process claim in the Complaint is based on meritless claims." Id.

Meanwhile, Plaintiff argues that "firing Sgt. Camacho for publishing the articles about matters of public concern violates the First Amendment." (Docket No. 178 at 1). As to Plaintiff's due process claim, Plaintiff argues that "Defendants' argument that they afforded Sgt. Camacho due process, it is precluded by the Investigating, Processing, and Appeals Commission (CIPA is the abbreviation in Spanish) decision, which Defendants appealed and lost and sought certiorari from the Supreme Court, which was denied." (Docket No. 178 at 2).

For the following reasons, the court **GRANTS** in part and **DENIES** in part Defendants' motion for summary judgment. (Docket No. 167).

## I. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 324-325 (1986).

Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to

judgment as a matter of law." Veda-Rodriguez v. Puerto Rico Tel. Co., 110 F.3d 174, 179 (1st Cir. 1997). "A dispute is 'genuine' if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party." Johnson v. U. of P.R., 714 F.3d 48, 52 (1st Cir. 2013); Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (*citing* Thompson v. Coca–Cola Co., 522 F.3d 168, 175 (1st Cir. 2008)); Calero–Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The objective of the summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (*citing* the advisory committee note to the 1963 Amendment to Fed. R. Civ. P. 56(e)). The moving party must demonstrate the absence of a genuine issue as to any outcome-determinative fact on the record. *See* DeNovellis v. Shalala, *supra*, at 306. Upon a showing by the moving party of an absence of a genuine issue of material fact, the burden shifts to the nonmoving party to demonstrate that a trier of fact could reasonably find in his favor. *Id.* (*citing* Celotex Corp. v. Catrett, *supra*, at 323). The non-movant may not defeat a "properly focused motion for summary judgment by relying upon mere allegations," but rather through definite and competent evidence. Maldonado–Denis v. Castillo Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). The non-movant's burden thus encompasses a showing of "at least one fact issue which is both 'genuine' and 'material.'" which affects the granting of a summary judgment. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990); *see*, *also*, Suarez v. Pueblo Int'l., 229 F.3d 49, 53 (1st Cir. 2000) (stating that a non-movant may shut down a summary judgment motion only upon a showing that a trial-worthy issue exists). As a result, the mere existence of "some alleged factual dispute between the parties will not affect an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., *supra*, at 477. Similarly, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." Ayala–Gerena v. Bristol Myers–Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996); Tropigas De P.R. v. Certain Underwriters at Lloyd's of London, 637 F.3d

53, 56 (1st Cir. 2011) ("We afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.") (internal citations omitted); Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

When considering a motion for summary judgment, the Court must "draw all reasonable inferences in favor of the non-moving party while ignoring conclusory allegations, improbable inferences, and unsupported speculation." Smith v. Jenkins, 732 F.3d 51, 76 (1st Cir. 2013) (reiterating Shafmaster v. United States, 707 F.3d 130, 135 (1st Cir. 2013)). However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] ... we will not draw *unreasonable* inferences or credit bald assertions, empty conclusions or rank conjecture." Vera v. McHugh, 622 F.3d 17, 26 (1st Cir. 2010) (internal quotations and citation omitted).

Furthermore, the Court must review the record as a whole and refrain from engaging in the assessment of credibility or the gauging the weight of the evidence presented. *See,* Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000); Anderson v. Liberty Lobby, Inc., *supra*, at 255; *see, also,* Pina v. Children's Place, 740 F.3d 785, 802 (1st Cir. 2014). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves, *supra*, at 150 (*quoting* Anderson v. Liberty Lobby, Inc., *supra*, at 250–51).

Summarizing, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56 (a). Hence, in order to prevail, Defendants must demonstrate that, even admitting well-pleaded allegations in light most favorable to Plaintiffs, the applicable law compels a judgment in its favor.  A fact is deemed "material" if the same "potentially affect[s] the suit's determination… issue concerning such a fact is 'genuine' if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party

resisting summary judgment, could resolve the dispute in that party's favor." Marrero v. Hosp. Hermanos Melendez, Inc., 253 F. Supp. 2d 179, 186 (D.P.R. 2003) (citations omitted)

a. **The Anti-Ferret Rule**

Local Rule 56(c) is clear about the obligation of a party opposing summary judgment:

> A party opposing a motion for summary judgment shall submit with its opposition a separate, short, and concise statement of material facts. The opposing statement shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule.

Local Rule 56(c).

Rule 56(e) sets forth in mandatory terms the result of failure to follow Rule 56(c): "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, *shall be deemed admitted unless properly controverted*." Local Rule 56(e) (emphasis added).

The First Circuit has held that the purpose of this rule is "to relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." CMI Cap. Mkt. Inv., LLC v. Gonzalez-Toro, 520 F.3d 58, 62 (1st Cir. 2008) Furthermore, "the filing of a motion for summary judgment signals a formidable search for a genuine issue of material fact. If this is not to impose the daunting burden of seeking a needle in a haystack, the court needs help from counsel." Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001)

In the instant case, Defendants filed with their motion for summary judgment a statement of uncontested material facts. Plaintiff's response includes (1) a list of alleged facts and (2) a response to defendant's statement of uncontested material facts. The list of alleged facts included by Plaintiff serves as a narrative-form explanation of plaintiff's perspective of the case, as Plaintiff began "the facts" list by stating "this is what happened". (Docket No. 178 at 3). The facts listed do not include any record citation whatsoever.  This requirement is stated in Local Rule 56 (c) which requires that an "opposing statement may contain in a separate section additional fact, set forth

in separate numbered paragraphs **and supported by a record citation** as required by subsection (e) of this rule." (emphasis ours) Plaintiff's section in its opposition titled "the facts" at page 3 through 4, is not supported by any citation to the record. Pursuant to the aforementioned rule, without a record citation, the Court cannot consider said facts.

With regards to Plaintiff's response to Defendants' statement of uncontested material facts, Plaintiff also failed to comply with Local Rule 56 by including in its response legal arguments, commentaries and other information that did not properly deny or qualify the fact. Not properly answering and/or opposing a summary judgment request under Local Rule 56(c) is ignored by parties "at their own peril." *See* Local Rule 56(c) and (e); *see also* Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001).

## II.     Factual Findings

Taking all disputed facts in the light most sympathetic to Plaintiff, as the party opposing summary judgment, the Court makes the following factual findings, which are undisputed or supported by the evidentiary record. The Court must note that, pursuant to Local Rule 56, the Court will only deem as genuinely opposed those statements of material facts which the objecting party **properly denied or qualified in strict compliance with Local Rule 56(c)**. Local Rule 56(b) strives to "create an organized and clear representation of issues of fact which are truly contested between the parties" Total Petroleum P.R. Corp. v. Colon , 819 F. Supp. 2d 55, 60 (D.P.R. 2011). In this case the parties have not provided the Court with an easy-to follow account of the disputed and undisputed facts. In compliance with the applicable rules, the Court has disregarded all arguments, conclusory allegations, speculation, and improbable inferences disguised as facts.

1. Plaintiff began working as an agent for the MSJ's Municipal Police in June 1998 and was promoted to the rank of sergeant in 2012.  (Docket No. 166, Defendants' Uncontested ¶1; Exhibit No. 1, Deposition of Mr. Camacho, at: 31:8-17; Dkt. 58, ¶¶ 12-13)

2. Plaintiff is the President and owner of Danny's Media Corp., a domestic entity created on December 21, 2013. (Defendants' Uncontested ¶4; Exhibit No. 3, Certificate of Registry; Exhibit No. 1 at 16:14-16)

3. Tunoticiapr.com (hereinafter referred to as "Tu Noticia") is a web domain that is a brand of Danny's Media. (Defendants' Uncontested ¶5; Exhibit No. 1 at 59:7-9)

4. In addition to being the President of Danny's Media, Camacho performs duties as reporter, photographer, editor, and secretary. (Defendants' Uncontested ¶6; Exhibit No. 1 at 16:17-20)

5. Since December 2013 until 2017 Mr. Camacho was working both as a municipal police officer and for Danny's Media's Tu Noticia. (Defendants' Uncontested ¶7; Exhibit No. 1 at 31:18-21)

6. Among the articles published by Tu Noticia were many relating to the Municipality of San Juan and the Municipal Police. (Defendants' Uncontested ¶8; Exhibit No. 1 at 64:15-23; Dkt. 58, ¶ 16)

7. On October 20, 2015 (revised on October 21, 2015), Marta Vera, the Director of Human Resources for the Municipality of San Juan issued a report that dealt with Mr. Camacho's journalistic work in Tu Noticia and how that might affect his responsibilities and duties of a municipal police officer. Said report concluded that Mr. Camacho was in violation of certain sections of the Municipal Police Regulations and The Government Ethics Law. (Defendants' Uncontested ¶25; Exhibit No. 4, Report dated October 20, 2015 (revised October 21, 2015).

8. Pursuant to Vera's Report, she was asked to evaluate whether Mr. Camacho could be subject of administrative actions due to fact that he was acting as a news reporter for Tu Noticia, while at the same time working as a police officer for the Municipal Police. (Defendants' Uncontested ¶26; Id.)

9. The Office of the Municipal Police Commissioner rendered a report to Municipal Police Deputy Director Ferrer and Director Calixto-Rodríguez dated January 20, 2016, with communication number DPSP-OC-C-2016-12. (Docket No. 167, Exhibit No. 5).

10. In said report both Mr. Calixto and Mr. Ferrer were presented with the preliminary findings regarding Mr. Camacho's journalistic work in Tu Noticia and how that might affect his responsibilities and duties of a municipal police officer. The report concluded that Mr. Camacho was in violation of various laws and regulations and recommend various courses of action. (Defendants' Uncontested ¶30; Exhibit No. 5, Report dated January 20, 2016)

11. On July 4, 2016, a baby drowned on the grounds of Casa Cuna San Juan. (Defendants' Uncontested ¶32; Docket No. 58 at ¶41).

12. On that date—July 4, 2016—Plaintiff was working as a Municipal Police Officer. (Defendants' Uncontested ¶33; Exhibit No. 1 at 66:6).

13. On July 5, 2016, Mr. Camacho began to spend his vacation and sick leave. (Defendants' Uncontested ¶37; Exhibit No. 6, License Request and Authorization).

14. On July 6, 2016, Tu Noticia published photographs of 3 inflatable pools on the Casa Cuna grounds. (Defendants' Uncontested ¶38; Exhibit No. 7, Tu Noticia Article dated July 6, 2016).

15. Mr. Camacho wrote and published said article. (Defendants' Uncontested ¶38; Exhibit No. 1 at 73:7-13).

16. On July 8, 2016, tunoticiaspr.com published a copy of an internal document from the MSJ ordering water to fill an inflatable pool. (Defendants' Uncontested ¶41; Exhibit No. 8, Tu Noticia Article dated July 8, 2016).

17. Mayor Cruz did not read any of the articles related to Casa Cuna at the time they were published. (Defendants' Uncontested ¶43; Exhibit No. 13 at 159:15-16, 161:18-21; 132:1-11, 156:1-2).

18. Mayor Cruz was not aware that Mr. Camacho had written the articles related to Casa Cuna. (Defendants' Uncontested ¶44; Exhibit No. 13 at 161:21-23,162: 22-24, 163:6-8).

19. On or around January 2017 Mr. Camacho had already returned from his leave and was working as a police officer for the Municipality of San Juan. (Defendants' Uncontested ¶46; Exhibit No. 1 at 104:2-6).

20. On June 25, 2017, Camacho presented his resignation from the San Juan Municipal Police Force. (Defendants' Uncontested ¶47; Exhibit No. 9, Mr. Camacho's Resignation Letter dated June 25, 2017).

21. On July 3, 2017, the San Juan Municipal Police Force Director Guillermo Calixto rejected Camacho's resignation, informed him of the filing of charges, the charges being filed and summarily suspended him from employment. (Defendants' Uncontested ¶49; Exhibit 10, Letter Dated July 3, 2017) .

22. The letter informed Mr. Camacho that a hearing was to be held on July 12, 2017. (Defendants' Uncontested ¶50; Id.).

23. Mr. Camacho received notice that administrative charges had been filed against him on July 10, 2017. (Defendants' Uncontested ¶51; Exhibit No. 1 at 115:10-23; Exhibit No. 14, Certification).

24. In response to a request from Mr. Camacho, the informal hearing was transferred and held on July 18, 2017. (Defendants' Uncontested ¶52;Exhibit No. 11, Examination Officer Report at page no. 7; Exhibit No. 1 at 116:7-10) .

25. Mr. Camacho appeared represented by attorney Ervin Sierra Torres at said hearing. (Defendants' Uncontested ¶53; Exhibit No. 11, page 7).

26. The pretermination hearing was held and the examining officer rendered a report on July 20, 2017. (Defendants' Uncontested ¶54; Exhibit No. 11, page 7).

27. On July 21, 2019, Commissioner Guillermo Calixto notified Mr. Camacho that he was adopting the recommendation of the Examination Officer and discharged Mr. Camacho

from the Municipal Police Officer. (Defendants' Uncontested ¶55 Exhibit No. 12, Letter Dated July 21, 2019).

### III. Legal Analysis
### a. 42 U.S.C. § 1983 violations

Section 1983 does not create any independent substantive rights; instead, Section 1983 is only a procedural vehicle to vindicate constitutional and other federal statutory violations brought about by state actors. See Baker v. McCollan, 443 U.S. 137, 145, n.3 (1979) ("Section 1983 ... is not itself a source of substantive rights, but [merely provides] a method for vindicating federal rights elsewhere conferred ...."); Albright v. Oliver, 210 U.S. 266 (1994); LockhartBembery v. Sauro, 498 F.3d 69, 74 (1st Cir. 2007); Cruz-Erazo v. Rivera-Montañez, 212 F.3d 617 (1st Cir. 2000). Section 1983 provides a mechanism to remedy for deprivations of rights that are federally enshrined elsewhere. Oklahoma City v. Tuttle, 471 U.S. 808 (1985). Section 1983 provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

When assessing the imposition of liability under Section 1983, we must first ask "(1) whether the conduct complained of was committed by a person acting under the color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 558 (1st Cir. 1989)(citing Parratt v. Taylor, 451 U.S. 527, 535 (1981)). Acting under color of state law requires that a "defendant in § 1983 action have exercised power possessed by virtue of state law and made possible only because wrongdoer is clothed with authority of state law." West v. Atkins, 487 U.S. 42, 49 (1988).

It is well settled that "the plaintiff in a Section 1983 action must show "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization, between the actor and the underlying violation." Sanchez v. Pereira-Castillo, 590 F.3d 31, 49 (1st Cir. 2009) (citations omitted). As discussed in this Court's prior Opinion and Order, section 1983 is an appropriate avenue to remedy Plaintiffs' claims since "all of the facts alleged by Plaintiff transpired under the umbrella of the Autonomous Municipality of San Juan, an executive agency of the Commonwealth of Puerto Rico." (Docket No. 103) .

### b. First Amendment Claim

To establish free-speech retaliation, Plaintiff must show that he "spoke as a citizen on a matter of public concern, that his interest in speaking outweighed the government's interest, as his employer, in promoting the efficiency of the public services it provides (an inquiry known as *Pickering* balancing, *see* Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)), and that his speech was a " 'substantial or motivating factor' " in his firing. *See, e.g.,* Foote v. Town of Bedford, 642 F.3d 80, 82–83 (1st Cir.2011) (quoting Curran v. Cousins, 509 F.3d 36, 45 (1st Cir.2007)); *see also* Díaz–Bigio v. Santini, 652 F.3d 45, 51–52 (1st Cir.2011)." Rodriguez v. Municipality of San Juan, 659 F.3d 168, 180 (1st Cir. 2011) On another note, the First Circuit has consistently held that "close temporal proximity between two events may give rise to an inference of causal connection." Nethersole v. Bulger, 287 F.3d 15, 20 (1st Cir. 2002)(citing Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998) (holding that the third criterion for determining whether an employment action contravenes a public employee's right to freedom of speech, namely the causation or motivation element, normally presents a factfinding responsibility for the jury)

Additionally, several circuits have held that "the absence of speech—in fact, its explicit disclaimer by plaintiff—is fatal to the plaintiff's claim." Fogarty v. Boles, 121 F.3d 886, 891 (3rd Cir. 1997); see Wasson v. Sonoma County Junior Coll., 203 F.3d 659 (9th Cir. 2000), cert. denied,

531 U.S. 927, 148 L. Ed. 2d 245, 121 S. Ct. 305 (2000); Jones v. Collins, 132 F.3d 1048, 1054 (5th Cir. 1998); Barkoo v. Melby, 901 F.2d 613 (7th Cir. 1990). Particularly, in Wasson v. Sonoma County, the Ninth Circuit determined that a plaintiff "[h]aving denied that she wrote the letters, [] undermines her claim that the defendants' conduct impermissibly chilled her speech" while adding that '[a] free speech claim depends on speech, and there was none in this case.'" 203 F.3d at 662 (quoting Fogarty, 121 F.3d at 890.)

In the instant case, Plaintiff recognizes that he "never wrote a single article about the San Juan Municipal Police Force, but he published all the articles found on tunoticiapr.com, many of which were critical of Mayor Cruz and the Municipality of San Juan." (Docket No. 58, ¶ 58). However, Plaintiff also alleges that he **wrote and published** several articles related to a drowning accident that occurred in Casa Cuna San Juan, including photographs of three (3) pools that were located at Casa Cuna San Juan and that the Defendants "retaliated against him for doing so." (Docket No. 58, ¶¶ 41-47, Docket No. 72 at 16)

Specifically, it is an uncontested fact, since Plaintiffs admitted to the same, that "On July 6, 2016, Tu Noticia published photographs of 3 inflatable pools on the Casa Cuna grounds. Exhibit No. 7, Tu Noticia Article dated July 6, 2016. Mr. Camacho wrote and published said article. Exhibit No. 1 at 73:7-13." (Docket No. 166 at 5 #38). Plaintiff's amended complaint alleges that a year later, "on July 3, 2017, the San Juan Municipal Police rejected Sgt. Camacho's resignation and fired him in retaliation for his writing and publishing articles about matters of public concern that were critical of co-Defendants." (Docket No. 58 at 8 #61) Defendants allege that "Camacho's claim to causation fails as he was under investigation prior to the protected conduct. It is well settled that there is a common-sense aspect to causation: to establish that an adverse employment action was caused by an employee's protected activity, the employer's decision to act adversely to the employee must postdate the protected activity." (Docket No. 167 at 20) Defendants posit that Plaintiff was under investigation prior to writing and publishing an article on July 6, 2016. Additionally, Defendants posit that "it is a fact that Camacho was ordered to use up

his vacation and sick leave prior to the publication by Tu Noticia of the articles related to the Casa Cuna incident. (SUMF ¶45)." (Docket No. 167 at 20). Plaintiff argues that "[D]efendants try to argue that the timing of Sgt. Camacho's dismissal was not suspicious because his ultimate dismissal did not occur until long after he was ordered work off his leave time. Whether the adverse employment action of using up all leave or the ultimate dismissal were the relevant event is a question for the jury." (Docket No. 178 at 9).

As discussed in the Court's previous Opinion and Order, for the articles prior to July 2016, "Mr. Camacho admits he did not write the articles subject to the 2015 Memorandum; therefore, he did not speak publicly, and accordingly, there was no speech from Plaintiff that could be protected." Hence, Plaintiff does not have a cognizable claim against Defendants for actions that arose prior to July 6, 2016, since there was no speech that could be protected. However, it is undisputed that after Plaintiff published an article related to the Casa Cuna incident, he was ultimately dismissed. (SUF #27) Whether or not the publishing of said article resulted in his ultimate dismissal is an issue of causation and responsibility of the jury. As previously stated herein determining whether an employment action contravenes a public employee's right to freedom of speech, namely the causation or motivation element, normally presents a factfinding responsibility for the jury. See, Nethersole, 287 F.3d 15 at 20 citing Springer v. Seaman, 821 F.2d 871, 876 (1st Cir. 1987).

Additionally, according to Defendants, it is "it is undisputed that Mayor Cruz did not intervene or participate in the proceedings that took place within the Municipal Police that ended with Mr. Camacho's dismissal." (Docket No. 168). Specifically, Defendants propose as uncontested fact number 26 that "Mayor Cruz did not participate in the draft of the October 21,2015 memo prepared by Mrs. Vera Exhibit No. 13 at 53:7-9". However, Plaintiff denied this statement and controverted the same by referring to Exhibit D at Docket No. 179 (hereinafter the, CIPA Resolution") In the CIPA Resolution, finding of fact number 2 "in response to a petition made

by telephone1 to her by the Honorable Mayor of San Juan, Carmen Yulin Cruz-Soto, Ms. Marta Vera-Ramirez, 2 on October 20, 20153 drafted a confidential report titled, CONSULTATION REGARDING THE ACTIONS OF A MEMBER OF THE MUNICIPAL POLICE OFFICER/REPORTER FOR WEBSITE TU NOTICIA PR.COM, which was forwarded to the municipality through Mr. Andrés R. Garcia-Martinó, City Manager." (Docket N. 179-4, Exhibit D) Defendants replied by stating that "Plaintiff's arguments are not supported by evidence. Specifically, Mrs. Vera was asked if the mayor requested that she investigate Sgt. Camacho and Mrs. Vera's response was "[n]o. she did not tell me to investigate the sergeant". Docket No. 179, Exhibit A, 87:22-25." (Docket No. 188 at 28). The Court considers that a genuine issue as to a material fact, whether or not Mayor Cruz played a significant role in the ultimate dismissal of Plaintiff, precludes the Court from granting summary judgment. As the Court has held that it may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact ..." Fed.R.Civ.P. 56(c). "To defeat a motion for summary judgment, the nonmoving party must demonstrate the existence of a trialworthy issue as to some material fact." Cortes–Irizarry v. Corporacion Insular, 111 F.3d 184, 187 (1st Cir.1997). "In applying this formulation, a fact is 'material' if it potentially affects the outcome of the case," *Vega–Rodriguez,* 110 F.3d at 178, and " 'genuine' if a reasonable factfinder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Cortes–Irizarry, 111 F.3d at 187. "Speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant in the face of a properly documented summary judgment motion." Ruiz v. Caribbean Restaurants, Inc., 54 F. Supp. 2d 97, 103 (D.P.R. 1999)(citations omitted) The Court considers that determining Mayor Cruz's involvement in Plaintiff's dismissal requires the Court to engage in credibility determinations and the drawing of legitimate inference. Which, as discussed above, are jury functions and not those of a judge.

### c. Due Process Claim

Plaintiff's due process claims in the amended complaint circumscribe to the following allegations: that his dismissal was based on a letter dated May 10, 2017, that he did not receive until his dismissal. (Docket 58, ¶ 62). Plaintiff claims that such lack of notice prior to his dismissal violated his due process rights. (Id. ¶ 63). Furthermore, the Amended Complaint claims that while the letter references a hearing for May 18, 2017, Mr. Camacho did not receive the letter until after such date. (Id. ¶ 69). Finally, Plaintiff claims that the failure to provide prior notice as to the hearing violated his due process rights. (Id. ¶ 70)

Meanwhile, Defendants argue that Plaintiff's "poorly articulated due process claim in the Complaint is based on meritless facts" (Docket No. 167 at 2). Stating that "while Camacho never included a Due Process claim in Count I of the Amended Complaint, he does reference an alleged lack of notice related to his termination as a violation of his due process rights. (Docket 58 ¶70)." Id. at 6. In essence, Defendants posit that the undisputed facts demonstrate that "not only was Mr. Camacho appraised of the Municipality's intent to terminate his employment, but he was afforded a legal and valid pre-termination hearing, contrary to what Mr. Camacho alleged in the Amended Complaint. As it is undisputed that the Municipality of San Juan properly complied with all Due Process requirements prior to terminating Mr. Camacho's employment." Id.

In opposition, Plaintiff argues that "reasonably relied on having an opportunity to be heard during the investigative process, as General Order 89-17 requires… The Municipality of San Juan establishes a procedure for disciplining an officer, and the municipality failed to follow its own policy" (Docket No. 178 at 10-11).

The Due Process Clause of the Fourteenth Amendment provides that property cannot be deprived except pursuant to constitutionally adequate procedures. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). "[T]o establish a 'procedural due process claim under [§ ] 1983, a plaintiff must allege first that [he] has a property

interest as defined by state law and, second, that the defendants, acting under color of state law, deprived [him] of that property interest without [a] constitutionally adequate process.' " Diaz–Pedrosa v. P.R. Power Auth., 555 F.Supp.2d 306, 315 (D.P.R.2008) (internal citations omitted) (alterations in original). The Fourteenth Amendment requires that the deprivation of a property interest "be preceded by notice and opportunity for hearing appropriate to the nature of the case." Id. at 542, 105 S.Ct. 1487 (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). See, Maldonado v. Municipality of Barceloneta, 682 F. Supp. 2d 109, 128 (D.P.R. 2010)

The Court adds that a pre-termination hearing constitutes merely a "notice and opportunity for hearing appropriate to the nature of the case" prior to a deprivation of life liberty or property. Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493 (1985)(citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). " '[T]he root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.' ". Cleveland Board of Education, 470 U.S. at 542, 105 S.Ct. 1487 (emphasis ours ) (citing Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)(emphasis omitted ). The enunciated principle of pretermination hearings, requires " 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." Cleveland Board of Education, 470 U.S. at 542, 105 S.Ct. 1487 (citing Board of Regents v. Roth, 408 U.S., 564, 569–570, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972).

The purpose of a pre-termination hearing is to provide notice and "some opportunity for the employee to present his side of the case ...", to review if "the appropriateness or necessity of the discharge may not be [necessary]" and further to provide a "meaningful opportunity to invoke the discretion of the decision maker is likely to be before the termination takes effect." Cleveland

Board of Education, 470 U.S. at 543, 105 S.Ct. 1487 (emphasis ours )(citing Califano v. Yamasaki, 442 U.S. 682, 686, 99 S.Ct. 2545, 2550, 61 L.Ed.2d 176 (1979), Goss v. Lopez, 419 U.S., at 583–584, 95 S.Ct., at 740–741 and Gagnon v. Scarpelli, 411 U.S. 778, 784–786, 93 S.Ct. 1756, 1760–1761, 36 L.Ed.2d 656 (1973)). Furthermore "'effective notice and informal hearing permitting the [employee] to give his version of the events will provide a meaningful hedge against erroneous action. At least the [employer] will be alerted to the existence of disputes about facts and arguments about cause and effect.... [H]is discretion will be more informed and we think the risk of error substantially reduced.'" Cleveland Board of Education, 470 U.S. at 543, 105 S.Ct. 1487, FN 8 (emphasis on original) (quoting Goss, 419 U.S., at 583–584, 95 S.Ct., at 740–741). Moreover, "... the pretermination 'hearing,' though necessary, need not be elaborate." Cleveland Board of Education, 470 U.S. at 545, 105 S.Ct. 1487. "In general, 'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action." Cleveland Board of Education, 470 U.S. at 545, 105 S.Ct. 1487. Hence "... the pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions-essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Cleveland Board of Education, 470 U.S. at 545–546, 105 S.Ct. 1487 (emphasis ours) (citing Bell v. Burson, 402 U.S. 535, 540, 91 S.Ct. 1586, 1590, 29 L.Ed.2d 90 (1971). "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." Cleveland Board of Education, 470 U.S. at 546, 105 S.Ct. 1487. "We conclude that all the process that is due is provided by a pretermination opportunity to respond, coupled with post-termination administrative procedures ...". Cleveland Board of Education, 470 U.S. at 547–548, 105 S.Ct. 1487.2

As discussed above, the following facts are uncontested in the instant case:

1. On June 25, 2017, Camacho presented his resignation from the San Juan Municipal Police Force. (SUMF #20)

2. On July 3, 2017, the San Juan Municipal Police Force Director Guillermo Calixto rejected Camacho's resignation, informed him of the filing of charges, the charges being filed and summarily suspended him from employment. (SUMF #21)

3. The letter informed Mr. Camacho that a hearing was to be held on July 12, 2017. (SUMF #22)

4. Mr. Camacho received notice that administrative charges had been filed against him on July 10, 2017. (SUMF #23)

5. In response to a request from Mr. Camacho, the informal hearing was transferred and held on July 18, 2017. (SUMF #24)

6. Mr. Camacho appeared represented by attorney Ervin Sierra Torres at said hearing. (SUMF #25)

7. The pretermination hearing was held and the examining officer rendered a report on July 20, 2017. (SUMF #26)

8. On July 21, 2019, Commissioner Guillermo Calixto notified Mr. Camacho that he was adopting the recommendation of the Examination Officer and discharged Mr. Camacho from the Municipal Police Officer. (SUMF #27)

Although Plaintiff attempted to contest, some, of the above-mentioned facts, he did not prevail. The supporting documents and deposition transcripts in the record provide that a notice was received, that a hearing was held, that he was represented by an attorney during the hearing and that all of this took place prior to Commissioner's Guillermo Calixto's notification that he was adopting the recommendation of the Examination Officer and discharged Plaintiff from the Municipal Police Officer. Before the Court's consideration is not whether or not the grounds for

discharging were valid. But rather if the Municipality afforded Plaintiff a due process prior to the discharge.

Plaintiff, for the first time, argues that the alleged due process violation was for incompliance with General Order 89-17. Defendants argue that "this blatant attempt to amend the complaint in the Summary Judgment without providing prior proper notice to Defendants of these new allegations and must be denied by this Honorable Court." (Docket No. 189 at 6). The Court agrees. This Court has held that it will not allow a plaintiff to amend his/her allegations through his/her opposition pleading. Rodriguez v. Pfizer Pharms., Inc., 286 F.Supp.2d 144, 152 (D.P.R.2003) (holding that "It is one matter that the Court must analyze the factual scenario in this case construing the facts, the record, and all reasonable inferences in the light most favorable to the party opposing summary judgment. Another is to allow the Plaintiff to bring forth new never raised allegations, and previously unmentioned major life activities that have been allegedly affected. The Court is not obliged to search the record, where Plaintiff failed to request to amend the complaint, in order to set forth those new allegations, and theories.)(citations omitted)

### IV. Conclusion

Wherefore, after a thorough review of the record, the Court hereby GRANTS IN PART AND DENIES IN PART Defendants' Motion for Summary Judgment. It is clear to the Court that there are no genuine issues of material facts as to Plaintiff's due process claim. The Court hereby DISMISSES WITH PREJUDICE any Section 1983 action premised on due process. However, with regards to Plaintiff's First Amendment claims, the Court finds that genuine issues of material facts preclude the Court from granting Defendants' motion for summary judgment in its entirety.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of September 2023.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge